**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **TERESE W.,** | * |
| **Plaintiff,** | * |
| **v.** | *    **Civil Action No. EA-25-2735** |
| **FRANK J. BISIGNANO,** | * |
| **Commissioner of Social Security,** | |
| | * |
| **Defendant.** | |
| | * |

**MEMORANDUM OPINION**

On August 20, 2025, Plaintiff Terese W. petitioned this Court to review the final decision

of the Social Security Administration (SSA or Commissioner) denying her claim for benefits.[1]

ECF No. 1.  Pending before the Court is Plaintiff's appeal, which is fully briefed.[2]  ECF Nos. 17,

19.  No hearing is necessary.  Local Rule 105.6 (D. Md. Dec. 1, 2025).  The Court must uphold

the decision of the SSA if it is supported by substantial evidence and if the SSA employed the

proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Charter*, 76 F.3d 585, 589 (4th

Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's

decision is affirmed.

**I.     BACKGROUND**

**A.     Procedural History**

On April 28, 2022, Plaintiff filed for Disability Insurance Benefits under Title II of the

Social Security Act (the Act), 42 U.S.C. § 401 *et seq*., alleging a disability onset date of

---

[1]  This case was referred to a United States Magistrate Judge with the parties' consent and reassigned to the undersigned on June 5, 2026.  ECF Nos. 3, 5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2]  Plaintiff elected not to file a reply and the time for doing so has expired.  Local Rule 105.2(a).

April 1, 2022.  ECF No. 13-4 at 8, 20.[3]  Plaintiff claimed that she is disabled within the meaning of the Act due to breast cancer, lymphatic cancer, lymphedema, anxiety, and depression.  ECF Nos. 13-4 at 2; 13-5 at 12.  The SSA denied Plaintiff's application for benefits on October 11, 2022.  ECF No. 13-5 at 9.  Plaintiff sought reconsideration, and the SSA affirmed its decision on November 21, 2022.  *Id*. at 23, 26.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on July 20, 2023.  ECF Nos. 13-3 at 79–117; 13-4 at 20; 13-5 at 35.  The ALJ rendered a decision on November 3, 2023, in which the ALJ found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 13-4 at 20–31.  Plaintiff requested further review by the Appeals Council, which remanded the case to the ALJ on April 19, 2024.[4]  ECF Nos. 13-4 at 37–40; 13-5 at 113, 138.  The ALJ held a hearing on September 24, 2024, and rendered a second decision on January 21, 2025, in which he again concluded that Plaintiff was not disabled within the meaning of the Act.  ECF No. 13-3 at 18–29, 42–78.  Plaintiff requested further review, which the Appeals Council denied on July 31, 2025.  *Id*. at 2.  The ALJ's January 21, 2025 decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

## B.    Statutory Framework

The Act authorizes Disability Insurance Benefit payments to every insured individual who "is under a disability."  *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999)

---

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4]  The Appeals Counsel directed the Administrative Law Judge (ALJ) to: (1) to note that Plaintiff's earnings for 2022 extend her date last insured to December 31, 2027; (2) give consideration to the prior administrative medical findings; (3) give further consideration to Plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and (4) obtain supplemental evidence from a vocational expert to clarity the effect of the assessed limitations on the Plaintiff's occupational capacity.  ECF No. 13-4 at 40.

(quoting 42 U.S.C. § 423(a)(1)); *see also Shue* v. *O'Malley*, No. 23-1795, 2024 WL 2827936, at *3 (4th Cir. June 4, 2024). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To receive the requested benefit under the SSA, "a plaintiff has the burden of proving disability." *Britt* v. *Saul*, 860 Fed. Appx. 256, 257 (4th Cir. 2021).

Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. § 404.1520. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step five, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at step three of the sequential evaluation, the ALJ must then assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e); *Monroe*

v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ then uses the residual functional capacity determination at steps four and five of the disability assessment. 20 C.F.R. § 404.1520(e); *Monroe*, 826 F.3d at 179-180.

### C.    ALJ Decision

The ALJ initially determined that Plaintiff met the insured status requirements of the Act through December 31, 2027. ECF No. 13-3 at 21. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2022, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff had the severe impairments of breast cancer, lymphatic cancer, right arm lymphedema, neuropathy, disorders of the skeletal spine, and Pageants disease. *Id*. The ALJ also determined that Plaintiff has the non-severe impairments of asthma, anxiety disorder, and major depressive disorder. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[5] *Id*. at 23. In reaching this conclusion, the ALJ evaluated the "paragraph B" functional areas and concluded that Plaintiff has a mild limitation in each of these four functional areas. ECF No. 13-3 at 21–22.

Before continuing to step four, the ALJ concluded that the Plaintiff retains the residual functional capacity to:

> perform light work . . . except she is able to stand and/or walk up to 4 hours in an 8-hour workday, and sit up to 6 hours in an 8-hour workday.

---

[5] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments. Within Appendix 1, "Adult Listings 12.00 *et seq*. . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T*. v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).

> She is occasionally able to climb ramps or stairs, never able to climb ladders, ropes or scaffolds, frequently able to balance, and occasionally able to stoop, kneel, crouch, or crawl.
>
> She is limited to occasional use of the right upper extremity for overhead reaching, frequent use of the right upper extremity for pushing/pulling or operation of hand controls, frequent use of the right upper extremity for fine fingering or grasping/handling of small objects, and occasional use of either lower extremity for pushing/pulling or operation of foot controls.
>
> She should avoid work at unprotected heights or around dangerous moving machinery, such as Forklifts.

*Id*. at 23 (bold removed, line breaks added).  At step four, the ALJ determined that Plaintiff was unable to perform past relevant work as a daycare worker.  *Id*. at 27.  At step five, the ALJ determined that considering her "age, education, work experience, and residual functional capacity," Plaintiff could perform "other jobs that exist in significant numbers in the national economy."  *Id*. at 28.  The ALJ therefore concluded that Plaintiff was not under a disability as defined by the Act and the SSA properly denied her claim for benefits.  *Id.* at 29.

## II.   DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity determination is defective because he erred in his assessment of her physical capabilities and failed to account for her depression and anxiety, which he erroneously found to be non-severe impairments.  ECF No. 17-1 at 12–14, 16.  The Commissioner argues the opposite.  ECF No. 19 at 6–16.

### A.   Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt*, 860 Fed. Appx. at 259 (citing 42 U.S.C. § 405(g)).  The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence."  *Id*.  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)

("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015). Rather, an administrative decision's reasoning need only be "reasonably discernible." *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

### B.      Residual Functional Capacity

A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-9p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996). "The function-by-function approach asks the ALJ to consider a

claimant's specific 'exertional and nonexertional functions.'"[6] *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018) (quoting SSR 96-8p, at 61 Fed. Reg. 34,476). The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 404.1567 (defining the physical exertion requirements of each exertional level of work). While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."). Remand is appropriate when the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review." *Thomas*, 916 F.3d at 312.

---

[6] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

1.    Physical Impairments

Plaintiff argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ disregarded evidence contrary to his finding that Plaintiff "is able to stand and/or walk up to 4 hours in an 8-hour workday" and frequently use her "right upper extremity for fine fingering or grasping/handling of small objects."[7] ECF Nos. 13-3 at 23; 17-1 at 14. Plaintiff further contends that the ALJ "substituted his own opinion for that of the substantial evidence." ECF No. 17-1 at 16.

The ALJ analyzed evidence related to Plaintiff's physical impairments and concluded that she had the residual functional capacity to perform light work with limitations. *See* I.C., *supra*. The ALJ reviewed Plaintiff's testimony regarding the intensity, persistence, and effects of her alleged conditions. ECF No. 13-3 at 24. For example, the ALJ noted that Plaintiff's cancer and lymphedema reportedly made it difficult for her to lift, squat, bend, reach, kneel, stand, walk, sit, climb stairs, and complete tasks. *Id.* The ALJ also addressed Plaintiff's testimony as to the effects of her chemotherapy treatment; specifically, that it caused fatigue, confusion, and negatively affected her memory. *Id.* Further, the ALJ acknowledged Plaintiff's testimony that she had trouble with gripping, which was caused by her right arm, hand, and breast neuropathy; and that she was only able to stand for "up to 20 to 30 minutes, walk for about 50 feet or for 20 minutes . . . and lift and carry up to 10 pounds." *Id.* The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the . . . evidence in the record." *Id.*

---

[7] Plaintiff also contends, without citation to the record or other authority, that it was error for the ALJ to find that she could "lift and carry 20 pounds." ECF No. 17-1 at 14. This physical capability does not feature as part of the ALJ's residual functional capacity determination. ECF No. 13-3 at 23. Instead, in his decision, the ALJ discussed evidence supporting Plaintiff's ability to lift and carry 10 pounds or less. *Id.* at 24, 26–27.

The ALJ then engaged in a detailed review of other record evidence (*id*. at 24–27) and explained how it was inconsistent with Plaintiff's testimony and therefore supported a finding that Plaintiff's "impairments limited her to a reduced range of light work, but did not persist at disabling levels" (*id.* at 26).  For example, the ALJ reviewed treatment notes tracking Plaintiff's progress from the alleged onset date, April 1, 2022, through October 2024 (*id.* at 24–26), when it was documented that she "regularly exhibited 5 out of 5 strength, full range of motion of all joints, . . . and was able to abduct the arms 180 degrees" (*id.* at 26).  Further, the ALJ reviewed a third-party function report prepared by Plaintiff's husband and the consultative examiners' opinions*. Id*. at 26–27.  The ALJ "adequately explain[ed] conclusions regarding credibility and how those conclusions factored into [the residual functional capacity] determination." *Jermain G*. v. *Kijakazi*, Civil Action No. GLS-21-2445 2023 WL 196050, at *4 (D. Md. Jan. 17, 2023). Specifically, the ALJ identified each opinion's persuasive value and explained the rationale supporting each opinion's particular weight.  For example, the ALJ found unpersuasive the opinions of C. Pio Roda, MD and M. Lowen, MD because their reports were "not well-supported by the findings documented in their opinions, and not consistent with more recently submitted evidence" showing, among other things, that Plaintiff "exhibited full range of motion" and "5 out of 5 strength."  ECF No. 13-3 at 26.

Plaintiff points to the opinions of Qiwei Gai, MD, and Carolyn Trainer, PA-C, as supportive of her position.[8]  ECF No. 17-1 at 15.  Yet, the ALJ evaluated these opinions and explained why he found them to have limited persuasive value.  ECF No. 13-3 at 26 (explaining that Dr. Gai's opinion was only partially persuasive because portions were "not well-supported" and "were not found to be consistent with more recently submitted evidence"), 27 (explaining

---

[8]  "PA-C" is a physician assistant, certified. "Pac." (Medical Definition) Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/392P-RD2R (last visited July 16, 2026).

that PA-C Trainer's opinion "provides little persuasive value, as it is not well-supported by the findings documented in their opinion, and the remaining limitations are inconsistent with the claimant's testimony on elevating her legs 20 minutes a day, and with treatment notes showing full range of motion, 5 out of 5 strength, normal gait, balance, sensation, and reflexes, and no tenderness, joint or muscle swelling, or edema"). An "ALJ need not accept the opinion of any physician (including a treating physician) if such is brief, conclusory, and inadequately supported by clinical findings." *Demetrius J.* v. *Saul*, Civil Action No. JMC-18-3812, 2019 WL 7037956, at *5 (D. Md. Dec. 20, 2019). Further, an ALJ's determination as to the persuasiveness of a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies.'" *Dunn* v. *Colvin*, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (internal citation omitted). No such inconsistencies are present here.

To be sure, an ALJ is prohibited from substituting their "own lay opinion for a medical expert's when evaluating the significance of clinical findings." *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020). An "ALJ impermissibly play[s] doctor . . . when the ALJ draws medical conclusions themselves about a claimant without relying on medical evidence." *Marshall* v. *Berryhill*, Civil Action No. TMD-16-62, 2017 WL 1196488, at *4 (D. Md. Mar. 31, 2017) (internal quotation marks and citation omitted). While "an ALJ cannot play the role of doctor and interpret medical evidence when [the ALJ] is not qualified to do so, the weighing of various evidence is precisely the typical province of the ALJ." *Id.* (internal quotation marks and citations omitted). The key consideration is whether the ALJ's evidentiary evaluation is supported by substantial evidence. *E.g.*, *Demetrius J.*, 2019 WL 7037956, at *4-5 (finding the ALJ's residual functional capacity determination was supported by substantial evidence and she was not improperly "reaching her own medical conclusions about the evidence"); *Marshall*, 2017 WL 1196488, at *4-5 (holding that the ALJ did not "improperly

10

substitute[] her opinion for the opinion of doctors" where substantial evidence supported the ALJ's assignment of little weight to a medical opinion).

Here, the ALJ engaged in a careful review of the record evidence, identified the evidence that was inconsistent with Plaintiff's testimony, and explained why the evidence did not support the Plaintiff's alleged degree of limitation.  ECF No. 13-3 at 24–27.  His residual functional capacity determination with respect to Plaintiff's physical limitations is supported by substantial evidence.  *Ladda*, 749 Fed. Appx. at 172 (ruling that substantial evidence supported the ALJ's residual functional capacity assessment where the ALJ explained supporting and contradicting evidence and the relative weight assigned to each).  As the Commissioner correctly notes, Plaintiff's argument regarding the ALJ's evaluation of her physical limitations boils down to an impermissible request for the undersigned to reweigh evidence.  ECF No. 19 at 8.  The undersigned declines this invitation.  This Court does "not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)."  *Id.* (internal quotation marks and citation omitted).

### 2.   Non-Severe Mental Impairments

Plaintiff also argues that the ALJ's residual functional capacity determination is deficient because the ALJ erroneously concluded that Plaintiff's depression and anxiety were non-severe and failed to address her mental impairments in his residual functional capacity determination. ECF No. 17-1 at 12–13, 16.

At step two, an ALJ must determine whether a claimant has "medically determinable impairments" and, if so, whether they are "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  If a claimant

11

has no severe impairments, the claimant is not disabled, and the sequential analysis stops there. *Tamika B.* v. *Saul*, Civil Action No. GLS-19-3345, 2021 WL 949469, at *2 (D. Md. Mar. 12, 2021). If a claimant has at least one severe impairment, an ALJ must consider the effects of both severe and non-severe impairments at the subsequent steps of the process, including the residual functional capacity determination. *Louise H. v. Commissioner., Soc. Sec. Admin.*, Civil Action No. ADC-18-3922, 2019 WL 5309997, at * 5 (D. Md. Oct. 21, 2019); SSR 96-8p, 61 Fed. Reg. at 34,477. An ALJ must follow the special-technique regulation, 20 C.F.R. § 404.1520a, "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3—and its concomitant impact on the [residual functional capacity] assessment relevant to step 4." *Patterson*, 846 F.3d at 659. This regulation requires the ALJ "to rate [the claimant's] degree of limitation in the four broad functional areas known as the paragraph B criteria." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing 20 C.F.R. §§ 416.920a(c), 416.925); *see also* footnote 5, *supra*. The four "paragraph B" functional areas are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).

An ALJ rates a claimant's mental impairments in each of the paragraph B functional areas on a five-point scale, which ranges from "[n]o limitation (or none)" to "[e]xtreme limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2). "No limitation (or none)" means that the claimant is "able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00(F)(2)(a). "Extreme limitation" means the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis," *id.* at § 12.00(F)(2)(e), which "represents a degree of limitation that is incompatible with the ability to

do any gainful activity," 20 C.F.R. § 404.1520a(c)(4).  A "mild" limitation, which is second on the five-point scale, means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *slightly limited*."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(b) (emphasis added).  The claimant has the burden of demonstrating the severity of any impairments.  *Pass*, 65 F.3d at 1203.

Here, the ALJ engaged in the required analysis to determine the severity of Plaintiff's mental impairments and his findings are supported by substantial evidence.  The ALJ discussed the evidence relevant to each of the four paragraph B functional areas and concluded that Plaintiff had mild limitations in each.  ECF No. 13-3 at 21–22.  In reaching this conclusion, the ALJ reviewed Plaintiff's reports as to her symptoms, abilities, and activities, as well as the opinions of consultative examiners and treatment notes containing observations and examination results.  *Id.*  For example, with respect to the second functional area (interacting with others), the ALJ noted Plaintiff's statement that "she did not go out socially, but was still able to spend time with others" and "she mostly had normal temper, and usually got along with people well."  *Id.* at 22.  The ALJ also noted that "upon examination, she was cooperative and had good eye contact," and that notwithstanding "diagnoses of anxiety disorder and major depressive disorder," Plaintiff "regularly exhibited responsive mentation appropriate and cooperative demeanor, normal speech and affect," and that the "[s]tate agency psychological consultants found mild limitation in this area."  *Id.*  The ALJ engaged in a similar discussion and analysis in the other three functional areas, concluding that Plaintiff had a mild limitation in each.  *Id.* at 21–22.  The ALJ further concluded that, because Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non[-]severe."  *Id*. at 22 (emphasis omitted).

"If the claimant's degrees of limitation are no more than 'mild,' the ALJ 'will generally conclude' that the claimant's mental impairments are not severe." *Nancy R.* v. *Bisignano*, Civil Action No. CDA-24-1825, 2025 WL 2097418, at *3 (D. Md. July 24, 2025) (quoting 20 C.F.R. § 404.1520a(d)(1)).  This is consistent with the SSA's policy guidance, which provides that "[a]n impairment or combination of impairments is found 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  Social Security Ruling 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, at *3 (Jan. 1, 1985).  As the United States Court of Appeals for the Fourth Circuit has instructed, evidence of a "disorder" is insufficient; there must also "be a showing of related functional loss."  *Gross* v. *Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *see also Felton-Miller* v. *Astrue*, 459 Fed. Appx. 226, 229-230 (4th Cir. 2011).  Here, Plaintiff did not carry her burden of establishing a functional loss.  The undersigned therefore concludes that the ALJ did not err at step two.

The ALJ also did not commit error by not addressing Plaintiff's mild mental limitations in his residual functional capacity determination.  "A finding of mild mental limitation means that functioning in a given area independently, appropriately, effectively, and on a sustained basis is only slightly limited."  *Kenneth C.* v. *Kijakazi*, Civil Action No. BAH-22-2936, 2023 WL 5721641, at *4.  (D. Md. Sept. 5, 2023) (quoting *Carter* v. *Kijakazi*, No. 5:22CV159-GCM, 2023 WL 5014781, at *3 (W.D.N.C. Aug. 7, 2023)); *see also* 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b)).  Therefore, "when a claimant possesses only a 'mild' limitation in an area of mental functioning . . . the ALJ is not required to craft [a residual functional capacity] provision to address the limitation."  *Kenneth C.*, 2023 WL 5721641, at *4; *see also Sandra K.* v. *Dudek*, No. 3:24-CV-00606, 2025 WL 1129015, at *4 n.1 & *7 (S.D.W. Va. Mar. 28, 2025), *report and recommendation adopted*, 2025 WL 1126548 (S.D.W. Va. Apr. 16, 2025) (collecting cases).

Neither Fourth Circuit caselaw nor applicable federal regulations require an ALJ to address non-severe impairments in a residual functional capacity determination; an ALJ is "only required to *consider* . . . non-severe impairments." *Britt*, 860 Fed. Appx. at 262 (emphasis in original). The ALJ gave Plaintiff's non-severe mental impairments the required consideration.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date:  July 16, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge